IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 4, 2023

## IN RE KAMAHRI W., ET AL.[1]

**Appeal from the Juvenile Court for Montgomery County**
**Nos. 2022-JV-419; 2022-JV-420; 2022-JV-421          Timothy K. Barnes, Judge**

_____

### No. M2023-00692-COA-R3-PT
_____

This action involves the termination of a father's parental rights to his three children. Following a bench trial, the court found that clear and convincing evidence existed to establish the following statutory grounds of termination: (1) abandonment by failure to provide a suitable home; (2) substantial noncompliance with the permanency plans; (3) the persistence of conditions which led to removal; and (4) failure to manifest an ability and willingness to assume custody of the children. The court also found that termination was in the best interest of the children. We affirm the trial court's ultimate termination decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed in Part, Reversed in Part; Case Remanded**

JOHN W. McCLARTY, J., delivered the opinion of the court, in which W. NEAL McBRAYER and KENNY ARMSTRONG, JJ., joined.

Casey D. Davidson, Clarksville, Tennessee, for the appellant, Tyler W.

Jonathan Skrmetti, Attorney General & Reporter, and Amber L. Barker, Senior Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

### OPINION

### I.       BACKGROUND

This appeal concerns Kamahri, Leira, and Dash (collectively "the Children"), who were born in December 2016, January 2018, and February 2021 to Tiffany C. ("Mother").

---

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

Tyler W.'s ("Father") name was placed on Kamahri and Leira's birth certificates, and Mother identified him as Dash's father but did not include him on the birth certificate.

In April 2021, the Tennessee Department of Children's Services ("DCS") removed the Children from the parents based upon allegations of environmental neglect and substance abuse. The Children were placed together in a pre-adoptive home and have remained there since removal. In August 2021, the Children were adjudicated as dependent and neglected based upon environmental concerns, noncompliance with services, domestic violence, lack of stability, and substance abuse.

In March 2022, DCS petitioned to terminate Father's parental rights to the Children[2] based upon the following statutory grounds: (1) abandonment by failure to provide a suitable home; (2) substantial noncompliance with the permanency plans; (3) the persistence of conditions which led to removal; (4) failure to manifest an ability and willingness to assume custody of the children; and (5) failure to establish paternity of Dash.

The case proceeded to a hearing on April 3, 2023, at which Sara Brogdon, a DCS team leader, and Father testified. Ms. Brogdon testified that she has served as the case manager since the time of the Children's removal. She provided that between the time of removal and the adjudication of the Children as dependent and neglected, DCS submitted clothing allotments for the Children, attempted to locate a relative placement, conducted several child and family team meetings, regularly drug screened Father, offered bus passes, and attempted to assist Father in completing services.

Ms. Brogden testified that she also crafted a permanency plan in May 2021 with the following specific requirements for Father: (1) complete an intensive alcohol and drug treatment program; (2) participate in random drug screens; (3) complete a psychological assessment and follow recommendations; (4) complete a parenting assessment with a domestic violence component and follow recommendations; (5) contact DCS and provide proof of legal income and stable housing; and (6) participate in visitation. A second plan was created in September 2021 with two additional requirements: (7) demonstrate learned skills of any services and (8) resolve all legal charges. A third plan was created in March 2022 with the same substantive requirements.

Ms. Brogden stated that Father completed his psychological assessment but did not follow recommendations. Likewise, he complied with drug screening but tested positive for methamphetamines from samples collected in July 2021 and October 2021. Father complied with visitation until it was suspended in October 2021 as a result of Mother's filing of a petition for an order of protection. The court continued the suspension of his visitation in January 2022 as a result of Father's lack of progress on his permanency plan

_____

[2] DCS also petitioned to terminate Mother's parental rights. Her rights were terminated. She does not appeal the termination of her rights and is not a party to this appeal.

requirements. He did not remit child support but may have brought some snacks and clothes to visitation prior to the suspension of his visitation. He was arrested and held in jail from February to March 2022 for an aggravated burglary charge. She was unaware as to whether Father had suitable housing or income. She acknowledged on cross-examination that Father completed a drug treatment program in December 2021 but stated that she was not notified of this until the hearing. She explained that he had not cooperated with DCS for some time.

Ms. Brogden claimed that the Children were doing well in their home placement and that their foster parents were prepared to adopt them should they become available for adoption. The Children were also involved in extracurricular activities and had developed relationships with the foster parents and their extended family.

Father testified that the environmental concerns with the home were "cleaned up" and that he provided photo documentation to DCS. However, he did not have his records with him at the hearing and no longer lived in that residence. He claimed that he attended visitation, completed a rehabilitation program, and completed his psychology assessment. He stated that his only outstanding legal issue was related to his failure to obtain car insurance. He is currently employed as an in-home caretaker for a gentleman in a one-bedroom residence. He stated that he would love to assume custody of the Children but acknowledged that he was unable to secure his own residence for them at the time of the hearing. He suggested that the Children could live with other relatives that were not considered by DCS as possible placements at the time of removal.

Following the hearing, the court issued a final order in which it found that the evidence presented established four of the five statutory grounds alleged. The court denied the ground of termination based upon Father's alleged failure to establish paternity of Dash. The court also found that termination of Father's rights was in the best interest of the Children. This appeal followed.

## II.    ISSUES

We consolidate and restate the issues pertinent to this appeal as follows:

A.    Whether clear and convincing evidence supports the trial court's finding of statutory grounds for termination.

B.    Whether clear and convincing evidence supports the trial court's finding that termination was in the best interest of the Children.

### III. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652–53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

Although parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See In Re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

> (1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
> (2) [t]hat termination of the parent's or guardian's rights is in the best interest[ ] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). "Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Audrey S.*, 182 S.W.3d at 861 (citations omitted). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523–24 (Tenn. 2016) (citations omitted); *see also In re Gabriella D.*, 531 S.W.3d 662, 680 (Tenn. 2017).

Lastly, in the event that the "resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues." *In re Navada N.*, 498 S.W.3d 579, 591 (Tenn. Ct. App. 2016) (citing *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997)). "Thus, this court gives great weight to the credibility accorded to a particular witness by the trial court." *In re Christopher J.*, No. W2016-02149-COA-R3-PT, 2017 WL 5992359 at *3 (Tenn. Ct. App. Dec. 4, 2017) (citing *Whitaker*, 957 S.W.2d at 837).

## IV. DISCUSSION

### A.

As indicated above, the trial court granted the termination petition based upon the following statutory grounds: (1) abandonment by failure to provide a suitable home; (2) persistence of conditions; (3) substantial noncompliance with the permanency plans; and (4) failure to manifest an ability and willingness to assume custody of the children. We will consider each ground as required by our Supreme Court. *In re Carrington H.*, 483 S.W.3d at 525–26 ("[T]he Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests.").

- 5 -

### 1. Abandonment

A parent may be found to have abandoned his or her child by failing to establish a suitable home. Tenn. Code Ann. § 36-1-113(g)(1). This ground for the termination of parental rights is established when:

(a) The child has been removed from the home or the physical or legal custody of a parent or parents . . . *by a court order* at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and the child was placed in the custody of the department or a licensed child-placing agency;

(b) The juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and

(c) For a period of four (4) months following the physical removal, the department or agency made reasonable efforts to assist the parent or parents . . . to establish a suitable home for the child, but that the parent or parents . . . have not made reciprocal reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date. The efforts of the department or agency to assist a parent . . . in establishing a suitable home for the child shall be found to be reasonable if such efforts equal or exceed the efforts of the parent . . . toward the same goal, when the parent . . . is aware that the child is in the custody of the department[.]

Tenn. Code Ann. § 36-1-102(1)(A)(ii) (emphasis added).

The record before this court does not contain the order of removal or the dependency and neglect petition. DCS does not defend this ground of termination due to the absence of these documents from the record. We have no doubt that the documents exist; however, as stated previously by this court, we cannot "assume the existence of facts which are not in the record*.*" *State Dept. of Children's Servs. v. D.W.J.*, No. E2004-02586-COA-R3-CV, 2005 WL 1528367, at *4–5 (Tenn. Ct. App. June 29, 2005) (reversing the termination ground of the persistence of conditions based upon the failure to admit the removal order into the record). We are unable to complete our de novo review on this issue based upon the record provided. Accordingly, we reverse this ground of termination. This conclusion does not end our inquiry because only one statutory ground is required to support the termination of Father's parental rights. Tenn. Code Ann. § 36-1-113(c).

2.      Persistence of conditions

Under Tennessee law, a trial court may terminate parental rights when:

(3)(A) The child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months *by a court order* entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:

(i)      The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;

(ii)     There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and

(iii)    The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home[.]

Tenn. Code Ann. § 36-1-113(g)(3) (emphasis added). Termination of parental rights requires clear and convincing evidence of all three factors. *In re Valentine*, 79 S.W.3d at 550. Additionally, the persistence of conditions ground may only be applied "where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse." *In re Audrey S.*, 182 S.W.3d at 874.

The record before this court does not contain the order of removal for this court's consideration. DCS does not defend this ground of termination due to the absence of the order from the record. We have no doubt that the order exists; however, as stated previously, we cannot "assume the existence of facts which are not in the record." *D.W.J.*, 2005 WL 1528367, at *4–5 (reversing the termination ground of the persistence of conditions based upon the failure to admit the removal order into the record). Indeed, the "threshold consideration" for this ground is a court order of removal. *In re Allie-Mae K.*, No. M2020-00215-COA-R3-CV, 2020 WL 6887870, at *11–12 (Tenn. Ct. App. Nov. 24, 2020) (reversing the termination ground of the persistence of conditions based upon the failure to admit the removal order into the record). We are unable to determine whether the children were removed from the home by a court order based upon the record provided, a necessary finding to sustain this ground of termination. Accordingly, we reverse this ground of termination. This conclusion does not end our inquiry because only one statutory ground is required to support the termination of Father's parental rights. Tenn. Code Ann.

- 7 -

§ 36-1-113(c).

### 3.    Substantial noncompliance

A court may terminate a parent's parental rights when the parent is in "substantial noncompliance . . . with the statement of responsibilities in a permanency plan." Tenn. Code Ann. § 36-1-113(g)(2). To terminate parental rights under this ground, the court "must first find that the plan requirements are reasonable and related to conditions that necessitate foster care placement." *In re Hannah H.*, No. E2013-01211-COA-R3-PT, 2014 WL 2587397, at *10 (Tenn. Ct. App. June 10, 2014). "Conditions necessitating foster care placement may include conditions related both to the child's removal and to family reunification." *In re Valentine*, 79 S.W.3d at 547. "The trial court must then find that the noncompliance is substantial." *In re Hannah H.*, 2014 WL 2587397, at *10 (citation omitted). When determining whether a parent's noncompliance with a plan was substantial, the court must do more than "count[ ] up the tasks in the plan to determine whether a certain number have been completed." *In re Carrington H.*, 483 S.W.3d at 537. DCS must show "that the parent's noncompliance is substantial in light of the degree of noncompliance and the importance of the particular requirement that has not been met." *In re M.J.B.*, 140 S.W.3d at 656 (citing *In re Valentine*, 79 S.W.3d at 548–59; *In re Z.J.S.*, No. M2002-02235-COA-R3-JV, 2003 WL 21266854, at *12 (Tenn. Ct. App. June 3, 2003)).

The record before this court does not contain the permanency plans entered by DCS and ratified by the trial court. DCS does not defend this ground of termination due to the absence of the permanency plans from the record. We have no doubt that the plans exist; however, as stated previously, we cannot "assume the existence of facts which are not in the record." *D.W.J.*, 2005 WL 1528367, at *4–5. We are unable to complete our de novo review of this issue based upon the record provided. Accordingly, we reverse this ground of termination. This conclusion does not end our inquiry because only one statutory ground is required to support the termination of Father's parental rights. Tenn. Code Ann. § 36-1-113(c).

### 4.    Failure to manifest an ability and willingness to assume custody

Pursuant to Tennessee Code Annotated section 36-1-113(g)(14) parental rights may be terminated when:

> A parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or

psychological welfare of the child.

Tenn. Code Ann. § 36-1-113(g)(14). This ground requires the petitioner to prove two elements by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c)(1), (g)(14); *In re Neveah M.*, 614 S.W.3d 659, 674 (Tenn. 2020). First, a petitioner must prove that the parent failed to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the child. *In re Neveah M.*, 614 S.W.3d at 674. Second, a petitioner must prove that placing the child in the parent's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child. *Id.*

As to the first element, our Supreme Court has instructed as follows:

[S]ection 36-1-113(g)(14) places a conjunctive obligation on a parent or guardian to manifest both an ability and willingness to personally assume legal and physical custody or financial responsibility for the child. If a person seeking to terminate parental rights proves by clear and convincing proof that a parent or guardian has failed to manifest either ability or willingness, then the first prong of the statute is satisfied.

*Id.* at 677 (citation omitted).

As to the second element, whether placing the child in the parent's custody "would pose a risk of substantial harm to the physical or psychological welfare of the child," we have explained:

The courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*In re Virgil W.*, No. E2018-00091-COA-R3-PT, 2018 WL 4931470, at *8 (Tenn. Ct. App. Oct. 11, 2018) (quoting *Ray*, 83 S.W.3d at 732 (footnotes omitted)).

In sustaining this ground of termination, the court found that Father failed to establish an ability to care for the Children as evidenced by his failure to remit child support throughout the custodial episode. Further, Father failed to establish his income for his in-home caretaker position and was living in a one-bedroom residence with his employer at the time of the hearing. Father acknowledged that he was unable to assume custody of the

Children at the time of the hearing. From these facts, we agree with the trial court that Father displayed an overall lack of an ability to assume legal and physical custody of the Children. The record further supports a finding that placing the Children with him would pose a risk of substantial physical or psychological harm to the Children's welfare given his failure to establish his ability to care for them at the time of the hearing. We affirm the court's finding on this issue.

B.

Having concluded that there was clear and convincing evidence supporting at least one statutory ground of termination, we must now consider whether termination of Father's parental rights was in the best interest of the Children. Tenn. Code Ann. § 36-1-113(c)(2); *In re Audrey S.*, 182 S.W.3d at 860. After a court finds that clear and convincing evidence exists to support a termination ground, "the interests of the parent and the child diverge" and the court focuses on the child's best interest. *In re Audrey S.*, 182 S.W.3d at 877. A finding that at least one ground for termination of parental rights exists does not necessarily require that a parent's rights be terminated. *Id.* Because some parental misconduct is redeemable, Tennessee's termination of parental rights statutes recognize "that terminating an unfit parent's parental rights is not always in the child's best interests." *Id.* The facts a court considers in the best interest analysis "must be proven by a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015). After making the underlying factual findings, the court "should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest." *Id.*

The statutory best interest factors applicable to this action are as follows:

(i)(1) In determining whether termination of parental or guardianship rights is in the best interest of the child, the court shall consider all relevant and child-centered factors applicable to the particular case before the court. Those factors may include, but are not limited to, the following:

(A) The effect a termination of parental rights will have on the child's critical need for stability and continuity of placement throughout the child's minority;

(B) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition;

(C) Whether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs;

(D) Whether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment;

(E) Whether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child;

(F) Whether the child is fearful of living in the parent's home;

(G) Whether the parent, parent's home, or others in the parent's household trigger or exacerbate the child's experience of trauma or post-traumatic symptoms;

(H) Whether the child has created a healthy parental attachment with another person or persons in the absence of the parent;

(I) Whether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage;

(J) Whether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of alcohol, controlled substances, or controlled substance analogues which may render the parent unable to consistently care for the child in a safe and stable manner;

(K) Whether the parent has taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions;

(L) Whether the department has made reasonable efforts to assist the parent in making a lasting adjustment in cases where the child is in the custody of the department;

(M) Whether the parent has demonstrated a sense of urgency in establishing paternity of the child, seeking custody of the child, or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest;

- 11 -

(N) Whether the parent, or other person residing with or frequenting the home of the parent, has shown brutality or physical, sexual, emotional, or psychological abuse or neglect toward the child or any other child or adult;

(O) Whether the parent has ever provided safe and stable care for the child or any other child;

(P) Whether the parent has demonstrated an understanding of the basic and specific needs required for the child to thrive;

(Q) Whether the parent has demonstrated the ability and commitment to creating and maintaining a home that meets the child's basic and specific needs and in which the child can thrive;

(R) Whether the physical environment of the parent's home is healthy and safe for the child;

(S) Whether the parent has consistently provided more than token financial support for the child; and

(T) Whether the mental or emotional fitness of the parent would be detrimental to the child or prevent the parent from consistently and effectively providing safe and stable care and supervision of the child.

(2) When considering the factors set forth in subdivision (i)(1), the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest.

(3) All factors considered by the court to be applicable to a particular case must be identified and supported by specific findings of fact in the court's written order.

(4) Expert testimony is not required to prove or disprove any factor by any party.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[ ] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[ ] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when

considering a child's best interest, the court must take the child's perspective, rather than the parent's). We will group our discussion of the best interest factors "based on the overarching themes within the list of twenty factors" under the circumstances of the case because many of these factors touch on similar factual predicates and involve similar issues. *In re Chayson D.*, No. E2022-00718-COA-R3-PT, 2023 WL 3451538, at *14 (Tenn. Ct. App. May 15, 2023).

We consider first the Children's emotional needs. *See* Tenn. Code Ann. § 36-1-113(i)(1)(A) (concerning the need for stability), (B) (concerning how changes in caretakers affect wellbeing), (D) (concerning the parent-child attachment), (E) (concerning visitation), (H) (concerning attachment to others), (I) (concerning relationships with others), (T) (concerning the parent's fitness and its corresponding impacts). With respect to these factors, the Children have bonded with their foster family, who expressed a desire to adopt them as a sibling group. The Children were doing well in their placement and have not seen Father since October 2021. Father agreed he was unable to personally assume custody of the Children at the time of the hearing.

We turn next to the Children's physical environment and well-being. *See* Tenn. Code Ann. § 36-1-113(i)(1)(O) (involving the parent's prior provision of safe and stable care to any child), (Q) (involving the parent's commitment to having a home that meets the Children's needs), (R) (involving the health and safety of the home). With respect to these factors, the Children were removed due to concerns of environmental neglect and substance abuse. Father failed to establish his ability to care for them at the time of the hearing. He did not submit proof of income or a residence for the Children. Indeed, he suggested a relative placement would be most appropriate at the time of the hearing.

Next, we consider Father's efforts. *See* Tenn. Code Ann. § 36-1-113(i)(1)(C) (involving the parent's continuity in meeting the Children's needs), (J) (involving the parent's lasting adjustment of circumstances), (K) (involving the parent's use of available resources), (L) (concerning efforts made by DCS); and (M) (concerning the parent's sense of urgency in addressing the circumstances that led to removal). While Father completed a drug rehabilitation program, he failed to provide proof of his completion prior to the hearing and refused any further cooperation with DCS. Father also did not have proof of income or suitable housing at the time of the hearing. Father has made little progress while the Children have been in DCS custody since April 2021.

With regard to support and knowledge of the Children's needs, Tenn. Code Ann. § 36-1-113(i)(1)(S) (addressing the parent providing more than token support), (P) (addressing the parent's understanding of their needs), the record reflects that Father did not remit child support during the custodial episode and was still unable to meet their needs at the time of the hearing.

The trial court considered all of the evidence, weighed the credibility of the

- 13 -

witnesses, and concluded that the best interest factors supported termination by clear and convincing evidence. The court did not find one factor in favor of Father. Upon our review of the evidence, we agree with the trial court's assessment and findings. Accordingly, we conclude that clear and convincing evidence in the record supports a determination that termination of Father's parental rights was in the Children's best interest.

## V. CONCLUSION

The judgment of the trial court is affirmed, in part, and reversed, as to the trial court's finding of termination based upon (1) abandonment by failure to provide a suitable home; (2) substantial noncompliance with the permanency plans; and (3) the persistence of conditions which led to removal. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Tyler W.

_____
JOHN W. McCLARTY, JUDGE